1  RACHELE R. BYRD (190634)
   byrd@whafh.com
2  BRITTANY N. DEJONG (258766)
   dejong@whafh.com
3  **WOLF HALDENSTEIN ADLER**
     **FREEMAN & HERZ LLP**
4  750 B Street, Suite 1820
   San Diego, CA 92101
5  Telephone:  619/239-4599
   Facsimile:   619/234-4599
6
   *Attorneys for Plaintiff*
7
   [Additional Counsel Appear on Signature Page]
8

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RIGGS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Breach of Contract;<br>(2) Breach of the Implied Covenant of Good Faith and Fair Dealing;<br>(3) Breach of Fiduciary Duty;<br>(4) Negligence;<br>(5) Gross Negligence;<br>(6) California's Consumers Legal Remedies Act, Civ. Code §§ 1750, *et seq.*;<br>(7) California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*;<br>(8) Unjust Enrichment; and<br>(9) Declaratory Relief<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

CLASS ACTION COMPLAINT

Plaintiff Michael Riggs ("Plaintiff"), individually and on behalf of all other persons similarly situated, by the undersigned attorneys, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, announcements made by defendants, wire and press releases published by and regarding Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), and Robinhood Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood" or "Defendants").

**NATURE OF THE ACTION**

1. This is a class action on behalf of all persons or entities who were unable to access and transact with their Robinhood accounts and incurred losses due to the inability to exercise or hedge expiring options, short positions, or limit orders during the period of March 2, 2020 through March 9, 2020 (the "Class Period"), seeking to recover damages caused by Defendants' actions. Plaintiff asserts putative class action claims generally including breach of contract, negligence, breach of fiduciary duty, and violations of California consumer protection laws, on behalf of himself and all other Robinhood customers who are similarly situated. He seeks damages, restitution, and injunctive relief.

2. Robinhood is an online brokerage firm founded in 2013 that touts itself as "a pioneer in commission-free investing." Robinhood's customers place securities trades through the firm's website, by using a web-based application (or "app"),[1] or by calling the firm's help center. Unfortunately for Robinhood's customers, including Plaintiff, Robinhood's trading systems completely crashed on Monday, March 2, 2020, and again on Monday, March 9, 2020, whereby Robinhood experienced a total outage of its operating systems (the "Outages"). Throughout the entire trading day, Robinhood's customers were prevented from making any securities trades through the firm's website, app, or call center.

---

[1] In exchange for using the app, Robinhood collects personal data about its users (including financial information), and sells this data to third parties.

CLASS ACTION COMPLAINT
- 1 -

3. As a result of the Outages, Plaintiff suffered financial losses due to being denied access to his Robinhood trading accounts and being unable to execute his transactions, and accordingly asserts these class action claims on behalf of himself and all others who suffered losses in their trading Robinhood accounts specifically as a result of their inability to place any securities trades during the Outages.

**JURISDICTION & VENUE**

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Plaintiff, as well as many members of the proposed class, are citizens of a state different from Defendants.

5. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood is headquartered and where it developed, distributed, marketed, advertised, and sold the financial services which are the subject of the present complaint.

6. Moreover, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because Robinhood is headquartered in Menlo Park and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District. Additionally, Robinhood's Terms of Service select courts in Santa Clara County as a venue for legal disputes.

7. This Court has personal jurisdiction over Robinhood because it is headquartered in and authorized to do business and does conduct business in California, and because it has specifically marketed, advertised, and made substantial sales in California, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## PARTIES

8. Plaintiff Michael Riggs is a citizen of Pennsylvania and is over the age of 18 and a user of Robinhood.

9. Defendant Robinhood Financial is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets. Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate, Defendant Robinhood Securities.

10. Defendant Robinhood Securities is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Defendant Robinhood Markets. Defendant Robinhood Securities is registered as a broker-dealer with the SEC. Defendant Robinhood Financial acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

11. Defendant Robinhood Markets is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial and Robinhood Securities.

## SUBSTANTIVE ALLEGATIONS

### Background

12. Robinhood has experienced significant growth as a startup. In 2019, Robinhood raised $323 million in funding at a $7.6 billion valuation. The firm markets itself primarily to younger investors and claims over 10 million users of its trading app.

### Defendants' Misconduct

13. On Monday, March 2, 2020, Plaintiff and others customers were unable to access their Robinhood accounts and unable to trade the securities in their accounts. This outage lasted

from 6:30 a.m. to 11:00 p.m. California time.[2]

14. Robinhood's systems woes continued into the following day. On Tuesday, March 3, 2020, a Robinhood spokesperson admitted that the cause of the March 2 Outage was "instability in a part of our infrastructure that allows our systems to communicate with each other."[3] At some point later that day, Robinhood's systems were restored.

15. Later, in a blog post on Robinhood's website dated March 3, 2020, Robinhood's founders stated:

> When it comes to your money, we know how important it is for you to have answers. The outages you have experienced over the last two days are not acceptable and we want to share an update on the current situation.
>
> Our team has spent the last two days evaluating and addressing this issue. We worked as quickly as possible to restore service, but it took us a while. Too long. We now understand the cause of the outage was stress on our infrastructure—which struggled with unprecedented load. That in turn led to a "thundering herd" effect—triggering a failure of our DNS system.
>
> Multiple factors contributed to the unprecedented load that ultimately led to the outages. The factors included, among others, highly volatile and historic market conditions; record volume; and record account sign-ups.[4]

16. The following week, on March 9, 2020, Robinhood once again experienced outages with customers unable to access their accounts and transact on the public markets.[5]

---

[2] Alan Mirabella, *Why So Many Users Are Furious After Popular Online Stock-Trading App Robinhood Crashed This Week*, TIME (Mar. 3, 2020), https://time.com/5794476/robinhood-outage-down/ (last visited Mar. 10, 2020).

[3] Alan Salzman, *Robinhood Trading App is Back Up After a Second Crash*, BARRON'S (Mar. 3, 2020), https://www.barrons.com/articles/robinhood-trading-app-returns-only-to-crash-again-on-tuesday-51583249601 (last visited Mar. 10, 2020).

[4] *An Update from Robinhood's Founders,* UNDER THE HOOD: THE OFFICIAL ROBINHOOD BLOG (Mar. 3, 2020), https://blog.robinhood.com/ (last visited Mar. 10, 2020).

[5] Jonathan Shieber, *The Robinhood app went down again as stocks got routed on Wall St.*, TECHCRUNCH (Mar. 9, 2020), https://techcrunch.com/2020/03/09/the-robinhood-app-is-down-again-as-stocks-get-routed-on-wall-st/ (last visited Mar. 10, 2020).

CLASS ACTION COMPLAINT
- 4 -

17. Under federal and state securities laws, securities industry rules, and industry best practices, brokerage firms that offer online trading services to their customers are required to, among other things, ensure that customers receive best execution of trades and that the firm has adequate operational capability to handle customer trading volume.

18. More specifically, the Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 5310.01 requires that Robinhood "must make every effort to execute a marketable customer order that it receives fully and promptly." By failing to respond at all to customers' placing timely trades, and in fact preventing them from doing so altogether, Robinhood has breached these obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure.

19. Moreover, Robinhood has a history of flouting these obligations. Just a few months before the outages, on December 19, 2019, FINRA announced it fined Defendant Robinhood Financial $1.25 million for best execution violations related to its customers' equity orders and related supervisory failures that spanned from October 2016 to November 2017.[6] As part of the settlement, Robinhood also agreed to retain an independent consultant to conduct a comprehensive review of the firm's systems and procedures related to best execution. *Id*.

20. Additionally, Robinhood has a history of failing to provide adequate service to its customers, particularly those engaged in options trading. For example, in December 2018, customers trading in options faced similar outages and incurred significant trading losses, similar to those affected during the Class Period.[7] After the December 2018 outage, Robinhood offered access to its premium service free for three months to affected customers.

---

[6] Michelle Ong & Mike Rote, *FINRA Fines Robinhood Financial, LLC $1.25 Million for Best Execution Violations*, FIRNA (Dec. 19, 2019), https://www.finra.org/media-center/newsreleases/2019/finra-fines-robinhood-financial-llc-125-million-best-execution (last visited Mar. 11, 2020).

[7] Dan DeFrancesco, *Robinhood's options trading stopped working, and customers are furious over the money they say they lost*, BUSINESS INSIDER (Dec. 13, 2019), https://www.businessinsider.com/robinhoods-options-trading-shutdown-and-customers-are-furious-2018-12 (last visited Mar. 11, 2020).

1    21.    Unfortunately, Robinhood failed to remedy the flaws in its systems.

**Plaintiff's Experiences**

22.    Plaintiff Riggs is a customer of Robinhood and entered into a Customer Agreement, as discussed further below, in order to use Robinhood's online trading systems.

23.    Plaintiff Riggs held VXX call options and had submitted in-the-money sell orders at the open on March 9, 2020. The transaction should have resulted in a net profit exceeding $35,000 for Plaintiff.

24.    Instead, at the beginning of trading on March 9, 2020, the transaction failed to execute. Plaintiff attempted to execute the transaction at a lower price that was below the prices indicated quoted by Robinhood as occurring in the market, thus indicating there were counterparties for the transaction. The lower price transaction was noted as accepted by Robinhood but it also failed to execute, preventing Plaintiff from mitigating his losses. No proceeds of these transactions entered Plaintiff Riggs' account, and instead, he incurred a near $1,000 loss.

25.    Plaintiff Riggs incurred similar losses on March 2, 2020, when he was unable to access his Robinhood account, with a net loss of approximately $10,000.

26.    Plaintiff Riggs relied on Robinhood to perform pursuant to its Customer Agreement and provide the contracted for financial services.

27.    As a result of the Outages, Plaintiff was unable to mitigate losses in his Robinhood account and suffered significant losses.

**CLASS ACTION ALLEGATIONS**

28.    Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class, as defined below:

> All Robinhood customers within the United States who were not able to execute trades on securities during the Outages or to change limit orders during the Outages and incurred financial losses.

29.    Excluded from the Class are the Robinhood entities and their current employees, counsel for the parties, as well as the Court and its personnel presiding over this action.

30.     The members of the Class are so numerous that joinder of all members is impracticable, since Robinhood has millions of customers. The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. Based on information and belief and publicly available reports, Class members are likely in the thousands. All Class members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

31.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class, which predominate over questions that may affect individual Class members, include, *inter alia*:

    (a)     Whether Robinhood's technology was inadequate to provide the financial services that were needed to handle reasonable consumer demand;

    (b)     Whether Robinhood failed to provide contingencies to customers to execute timely trades in the event of an Outage;

    (c)     Whether Robinhood violated FINRA Rule 5310;

    (d)     Whether Robinhood violated state consumer protection laws in failing to disclose that its technology-based financial services were inadequate and unable to perform for substantial periods of time;

    (e)     Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services in a timely manner;

    (f)     Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services in a timely manner;

    (g)     Whether Robinhood was negligent or grossly negligent by failing to provide financial services in a timely manner due to its substandard and inadequate technology platform;

    (h)    Whether Robinhood breached its fiduciary duties to customers by failing to provide adequate access to financial services in a timely manner;

    (i)    Whether Robinhood was unjustly enriched by its conduct;

    (j)    Whether Plaintiff and the other Class members were injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

    (k)    Whether Plaintiff and the other Class members are entitled to injunctive and declaratory relief.

32. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from the Defendants' wrongful conduct in a substantially identical manner.

33. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the other members of the Class.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I

### Breach of Contract

**(Alleged solely against Defendants Robinhood Financial and Robinhood Securities)**

35. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36. In order to use the Robinhood trading platform, a potential customer must enter into the Customer Agreement with Robinhood, which is attached hereto as Exhibit A.

37. Robinhood breached its Customer Agreement by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to

CLASS ACTION COMPLAINT
- 8 -

provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

38. As such, Robinhood breached its Customer Agreement with Plaintiff and Class members.

39. Robinhood's failure to perform and its breaches of the Customer Agreement resulted in damages and losses to Plaintiff and Class members and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement.

40. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT II

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(Alleged solely against Robinhood Financial and Robinhood Securities)**

41. Plaintiff hereby incorporates by reference the factual allegations contained herein.

42. Plaintiff and Class members entered into the contract identified as the Customer Agreement with Robinhood. *See* Ex. A.

43. Plaintiff and Class members fulfilled their obligations under the Customer Agreement by adhering to its terms and using Robinhood's services for the provision of financial services.

44. Robinhood was obligated under the Customer Agreement to timely provide the financial services required under the Customer Agreement at all times, including but not limited to when Plaintiff and Class members attempted to use the service during the Outages.

45. Robinhood unfairly interfered with Plaintiff's and Class members' rights to receive the benefits of the Customer Agreement by, among other things, failing to disclose: that its platform was inadequately built and maintained to handle consumer demand; that Robinhood

1  failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

46. Robinhood's conduct has caused Plaintiff and Class members' harm, losses, and damages and continues to expose them to harm because Robinhood continues to fail to perform.

## COUNT III

### Breach of Fiduciary Duty

47. Plaintiff hereby incorporates by reference the factual allegations contained herein.

48. As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiff and Class members and owed them the highest good faith and integrity in performing its financial services on their behalf. Robinhood also acted as a fiduciary to each and every customer who agreed to the Customer Agreement.

49. Robinhood breached its fiduciary duties to Plaintiff and Class members by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

50. Robinhood's conduct has caused Plaintiff and Class members harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT IV
### Negligence

51. Plaintiff hereby incorporates by reference the factual allegations contained herein.

52. Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

53. Robinhood unlawfully breached its duties by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

54. Robinhood's negligent and wrongful breaches of its duties owed to Plaintiff and Class members proximately caused losses and damages that would not have occurred but for Robinhood's breach of its duty of due care. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT V
### Gross Negligence

55. Plaintiff hereby incorporates by reference the factual allegations contained herein.

56. Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

57. Robinhood unlawfully breached its duties by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

58. Robinhood's conduct as set forth in this Complaint was want of even scant care and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct. Indeed, Robinhood essentially abandoned its customers altogether during the Outages, a standard of care so far below what is required for business engaging in time sensitive financial services that it amounts to a complete abandonment of its duties. Essentially no other conduct than that committed by Robinhood could be more grossly negligent than abandoning its customers altogether for substantial periods of times during which they incurred substantial losses and were unable to contact anyone at Robinhood.

59. Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiff and Class members proximately caused losses and damages that would not have occurred but for Robinhood's gross breach of its duty of due care. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT VI

## Violations of California's Consumers Legal Remedies Act,

## Cal. Civ. Code §§ 1750, *et seq.*

60. Plaintiff hereby incorporates by reference the factual allegations contained herein.

61. The California Consumers Legal Remedies Act ("CLRA"), Civil Code section 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

62. The CLRA applies to Robinhood's actions and conduct described herein because it extends to the transactions involving the sale of goods or services for personal, family, or household use within the meaning of Civil Code section 1761.

63. At all relevant times, Plaintiff and members of the Class were "consumers" as that term is defined in Civil Code section 1761(d).

64. Robinhood's practices in connection with the marketing and sale of its financial services violate the CLRA in at least (but not limited to) the following respects:

   a. In violation of section 1770(a)(5), Robinhood knowingly misrepresented its services;

   b. In violation of section 1770(a)(7), Robinhood represented its financial services to be of a particular standard, quality, or grade, but they were not; and

   c. In violation of section 1770(a)(9), Robinhood knowingly advertised its financial services with the intent not to sell and perform the services as advertised.

65. As set forth above, Robinhood's services are deceptive and misleading to reasonable consumers in violation of the CLRA because Robinhood failed to disclose that its platform was inadequately built and maintained to handle consumer demand; because Robinhood failed to provide adequate technological systems necessary to perform under the contract; because Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; because Robinhood failed to provide access to its financial services in a timely manner; because Robinhood's

1 platform was subject to and did experience substantial Outage(s) that prohibited the Parties 2 from performing in a timely manner (or at all) under the contract; because Robinhood failed to 3 comply with all applicable legal, regulatory, and licensing requirements; and because Robinhood 4 failed to exercise trades and actions requested by customers in a complete and timely manner 5 (also required by FINRA Rule 5310).

6      66.   Robinhood's conduct described herein was undertaken in transactions intended to 7 result in, and which did result in, the purchase of its financial services by consumers, which 8 caused harm to Plaintiff and Class members who would not have used Robinhood's services 9 had they known the truth. Plaintiff was in fact injured by losses incurred because of Robinhood's 10 deceptive conduct.

11     67.   The CLRA is, by its express terms, a cumulative remedy, such that remedies 12 under its provisions can be awarded in addition to those provided under separate statutory schemes 13 and/or common law remedies, such as those alleged in the other Counts of this Complaint. *See* 14 Cal. Civ. Code § 1752.

15     68.   In accordance with Civil Code section 1780, Plaintiff and Class members 16 seek injunctive and equitable relief for Robinhood's violations of the CLRA necessary to 17 bring it in compliance with the CLRA by, among other things, disclosing that its services are 18 substandard and unable to fulfill reasonable consumer demand, correcting its services so that 19 its platform can perform as necessary to comply with its legal, regulatory and contractual 20 obligations, and making customers whole for their losses.

21     69.   In accordance with Civil Code section 1780, Plaintiff served a notice pursuant to 22 Civil Code section 1782, via a certified letter, return receipt requested, requesting appropriate 23 relief on or about March 12, 2020. Should Robinhood fail to respond to Plaintiff's CLRA 24 demand in a satisfactory manner, Plaintiff will amend this Complaint to seek damages after the 25 expiration of the notice period.

# COUNT VII

## Violation of California Unfair Competition Law,

## Cal. Bus. & Prof. Code §§ 17200, *et seq*.

70. Plaintiff hereby incorporates by reference the factual allegations contained herein.

71. Robinhood has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq.* ("UCL"), because Robinhood's conduct is unlawful, unfair, and fraudulent as herein alleged.

72. Plaintiff, the members of the Class, and Robinhood are a "person" or "persons" within the meaning of Section 17201 of the UCL.

73. The UCL prohibits any unlawful, unfair, or fraudulent business practices or acts. Robinhood's conduct, as alleged herein, constitutes an unlawful, unfair and fraudulent business practice that occurred in connection with the marketing, advertisement and sale of its services.

74. Robinhood's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact, as described herein, violated the UCL's unlawful, unfair, and fraudulent prongs.

75. **Unlawful prong:** Robinhood's conduct, as described herein, violates the UCL's unlawful prong because: (1) it violates the CLRA in connection with the sale of goods and services; (2) constitutes a breach of contract and/or a breach of the implied covenant of good faith and fair dealing, (3) constitutes a breach of fiduciary duty; (4) constitutes negligence and/or gross negligence; (5) violates FINRA Rule 5310, which requires best execution of orders fully and promptly; and (6) has unlawfully and unjustly enriched Robinhood.

76. **Unfair prong:** Robinhood's conduct, as described herein, violates the UCL's unfair prong because it violates established public policy intended to regulate the fair and ethical sale of goods and services to consumers as set forth in the CLRA and by FINRA, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiff and the Class that outweigh any purported benefit.

77. At all times relevant herein, Robinhood's conduct of misrepresenting and concealing material facts from the Plaintiff and consumers regarding its faulty infrastructure and

refusal to timely perform caused them injury by inducing them to use Robinhood's services they would not have otherwise used, causing them losses. The utility of Robinhood's conduct in misrepresenting and concealing material facts from the Plaintiff and the Class is far outweighed by the gravity of harm to consumers who have now incurred losses they would not have otherwise incurred.

78. **Fraudulent prong:** Robinhood's conduct, as described herein, violated the UCL's fraudulent prong by misrepresenting and concealing material information that caused, or would likely cause, Plaintiff and the Class to be deceived into using Robinhood's services they would not have otherwise used.

79. At all times Robinhood has had exclusive knowledge of its substandard infrastructure that led to the Outages. Plaintiff and the Class have been harmed and sustained injury as a result of Robinhood's fraudulent conduct in violation of the UCL as explained herein.

80. Plaintiff has standing to pursue this claim because he has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

81. Plaintiff would not have used Robinhood's services and/or placed trades and made financial transactions through those services had he known the truth, though he has an interest in continuing to use the service in the future should Robinhood cure the problems set forth in this Complaint. As a direct result of Robinhood's actions and omissions of material facts, Plaintiff and Class members were unlawfully, unfairly, and fraudulently induced to make purchases and financial transactions that they otherwise would not have made, and lost their ability to make informed and reasoned purchasing decisions.

82. The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint. *See* Cal. Bus. & Prof. Code § 17205.

83. As a direct and proximate cause of Robinhood's conduct, which constitutes unlawful, unfair, and fraudulent business practices, as herein alleged, Plaintiff and Class members have been damaged and suffered ascertainable losses, thereby entitling them to recover

restitution and equitable relief, including disgorgement of ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## COUNT VIII

### Unjust Enrichment

84. Plaintiff hereby incorporates by reference the factual allegations contained herein.

85. By its wrongful acts and omissions described herein, Robinhood has obtained a benefit by unduly taking advantage of Plaintiff and Class members.

86. Robinhood, prior to and at the time Plaintiff and the members of the Class decided to use Robinhood's services and make financial transactions, knew and had knowledge and information that it could not withstand reasonable consumer demand and would be unable to execute trades in a complete and timely manner.

87. Robinhood was aware or should have been aware that reasonable consumers would have wanted to know the facts pertaining to its financial services before deciding whether or not to use them.

88. Robinhood was unjustly enriched at the expense of Plaintiff and Class members. Robinhood received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class members.

89. Since Robinhood's profits, benefits, and other compensation were obtained by improper means, Robinhood is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized.

90. Plaintiff and Class members seek an order of this Court requiring Defendants to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Robinhood from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## COUNT IX

### Breach of Fiduciary Duty

91. Plaintiff hereby incorporates by reference the factual allegations contained herein.

92. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the federal and state statutes described in this Complaint.

93. An actual controversy has arisen. Plaintiff alleges that Robinhood is not complying with its obligations under the Customer Agreement, FINRA Rule 5310, and does not maintain sufficient infrastructure to provide the financial services it must do so in a complete and timely manner.

94. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a. Robinhood owed and continues to owe a legal duty to comply with its agreements as well as regulatory requirements to maintain adequate infrastructure to handle consumer demand and execute trades in a complete and timely manner;

   b. Robinhood continues to breach this legal duty by failing to employ reasonable measures to prevent Outages and provide alternative means for customers to make timely financial transactions.

95. The Court also should issue corresponding injunctive relief requiring Robinhood to employ adequate quality control consistent with industry standards and the parties' contracts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

(A) Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and designating Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

(B)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all of the Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(C)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and expert fees; and

(D)     Awarding such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: March 13, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:     */s/ Rachele R. Byrd*
            RACHELE R. BYRD

RACHELE R. BYRD
BRITTANY N. DEJONG
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile:   619/234-4599
byrd@whafh.com
dejong@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
MATTHEW M. GUINEY
KEVIN G. COOPER
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile: 212/686-0114
guiney@whafh.com
kcooper@whafh.com

*Counsel for Plaintiff*

26318